## APPEAL OF ENSLEY MOTOR CO.

Docket No. 4269.   Submitted September 14, 1925.   Decided February 15, 1926.

> *Held,* that the deduction on account of the exhaustion of a lease held by the taxpayer as determined by the Commissioner was reasonable.

*H. C. Kilpatrick, Esq.,* for the taxpayer.
*Arthur J. Seaton, Esq.,* for the Commissioner.

Before GRAUPNER, TRAMMELL, and PHILLIPS.

This is an appeal from the determination of a deficiency for the calendar years 1920 and 1921 in the sum of $2,667.61. The appeal involves the proper amount to be allowed as a deduction for the amortization of a lease.

### FINDINGS OF FACT.

1. The taxpayer is an Alabama corporation, with a capital stock of $10,000 divided into 200 shares of the par value of $50 each. It was engaged in the automobile and garage business at Ensley, Ala. The principal stockholder, president, and manager of the taxpayer was one D. P. Knapp, who owned 191 out of 200 shares, the balance being held by two stockholders who took no · active part in the business.

2. In the year 1919 the taxpayer was desirous of securing another location for its business. D. P. Knapp, the president, negotiated with the firm of Ramsay & McCormack, owners of a suitable site, with a view to securing a lease and constructing a new building upon the property. The negotiations resulted in an agreement whereby a building was to be constructed by Knapp at a cost of $30,000, he to be given a lease for nine years at a nominal rental of $1.00. It was provided that in the event the cost of the building amounted to more or less than $30,000 the lease should be made on the same ratio as $30,000 is to nine years. It was also provided that in case Ramsay & McCormack should decide to terminate the lease they would pay for the cost of the building, less the said credits, and execute a five-year lease at a monthly rental based on the ratio of $350 per month on an investment of $30,000. The contract was made with D. P. Knapp personally because of his financial standing and prestige and with a desire to avoid the possibility of undesirable tenants in case

of transfer of the stock of the taxpayer. The preliminary contract was as follows:

JUNE 27th, 1919.

Mr. D. P. KNAPP,
   President Ensley Motor Company, Ensley, Alabama.

DEAR SIR: Your proposition that you construct a building 75x140 ft., two stories high, to be used for a garage and automobile sales room, on Lots 13, 14 and 15 in Block 19 D, Ensley, has been submitted to Messrs. Ramsay & Mc-Cormack and accepted by them.

This proposition, as we understand it, is:

The building is to cost approximately $30,000 and based on this cost you are to be given a lease for nine years for a consideration of $1.00. This building is to be erected entirely at your expense and plans and specifications for same must first be approved by Messrs. Ramsay & McCormack. Should the building cost more or less than $30,000, your contract will be made on the same ratio as $30,000.00 cost is to nine years lease. Messrs. Ramsay & Mc-Cormack reserve the right at any time to reimburse you for your expenditure, less a credit of $350.00 per month plus interest at 6% on the net amount you had in the building at the time, these debits and credits to be ascertained monthly.

Should Messrs. Ramsay & McCormack reimburse you at any time on the above basis, they are to execute you a lease on the property for five (5) years from that date at a monthly rental of $350.00, more or less, based on the ratio of $350.00 per month on an investment in buildings of $30,000.00.

Mr. E. J. Smyer will draw up this contract for us in duplicate and same will be submitted to you at an early date.

Very truly yours,

(Signed)     M. H. McDOWELL.

The building was completed and the taxpayer took possession February 1, 1920. The total cost was $48,914.37, which included $1,237.09 expended for shelving, bins, and other improvements for the special use of the automobile trade and not included between the parties as capital cost of the building. The cost of the building was financed by the taxpayer and Knapp jointly, but the cost was set up on the books of the taxpayer as a capital expenditure.

3. On April 12, 1921, in pursuance of the preliminary contract, the said Ramsay & McCormack leased the premises to D. P. Knapp as of February 1, 1920, to May 15, 1934, a term of 171.5 months, for a nominal consideration of $1. The basis of the investment was $47,637.28. It was provided that the lease might be terminated at any time by the lessors upon paying the cost of the building, less credits of $555.76 per month from February 1, 1920, and that a new lease would be executed by the lessors for a term of five years at a rate of $555.76 per month. The pertinent parts of the lease were as follows:

THIS LEASE AND CONTRACT made and entered into by and between Erskine Ramsay and G. B. McCormack, hereinafter called parties of the first part, and D. P. Knapp, hereinafter called party of the second part.

WHEREAS, the parties of the first part are the owners of lots 13, 14, and 15 block 19-D Ensley (Now in the city of Birmingham in Jefferson County, Alabama) as the same are shown and designated in a map and survey of Ensley, recorded in Map Book #4 page #3 of the map records in the Probate Office of Jefferson County, Alabama, said lots together forming a rectangle 75 by 140 feet, and fronting on Avenue " E " as shown by said map, and

WHEREAS, the party of the second part has erected and just completed a building on said lots at a mutually agreed cost to the party of the second part of Forty Seven Thousand Six Hundred and Thirty Seven and 28/100 ($47,-637.28) Dollars and

WHEREAS, the said building was erected by the party of the second part under an agreement that this lease and contract would be executed by and between the parties of the first part and the party of the second part, on the completion of said building.

NOW IN CONSIDERATION of the premises, this lease and contract is made and entered into by and between the parties of the first part and the party of the second part as follows to-wit:

1. The parties of the first part, in consideration of One Dollar ($1.00) to them in hand paid by the party of the second part, receipt whereof is hereby acknowledged, and the further consideration of the right given to the parties of the first part and obligations of the party of the second part to the parties of the first part under the terms hereof, hereby lease to the party of the second part the lots of land hereinbefore described for a term commencing as of February 1st, 1920, and ending May 15th, 1934, unless sooner terminated under the provisions hereof.

*	*	*	*	*	*	*

7. The parties of the first part shall have the right at any time, at their option, during the existence of this lease and contract, to terminate this lease and contract, and take possession of the property hereinbefore described, together with the building and appurtenances thereunto pertaining.

In the event the parties of the first part exercise their rights to terminate this lease and contract under the provisions hereof, the parties of the first part shall at the time of the termination of said lease and contract pay to the party of the second part the sum of Forty Seven Thousand Six Hundred and Thirty Seven and 28/100 ($47,637.28) Dollars, the cost of the building and improvements with interest thereon at the rate of six per cent (6%) per annum, from February 1st, 1920, up to the time of the termination of this lease and contract, less credits as on partial payments of Five Hundred Fifty Five and 76/100 ($555.76) Dollars per month at the end of each month from February 1st, 1920, up to the time of the termination of this lease and contract as an agreed rental for said property.

Provided that if the parties of the first part elect to terminate said lease under the provisions of this paragraph, then the parties of the first part shall execute a lease to the party of the second part on said property for a period of five years from the time this lease and contract is terminated at a rental to be paid by the party of the second part to the parties of the first part of Five Hundred Fifty Five and 76/100 ($555.76) Dollars per month payable monthly at the end of each month, with the right given to the party of the second part to sub-lease under this new lease; otherwise this new lease to be in such form and contain such provisions as are usual in leases of business property in Birmingham, Alabama.

Since February 1, 1920, the taxpayer deducted upon its books the sum of $555.76 per month from the said capital account.

4. During the taxable years in question, the taxpayer held no formal stockholders' or directors' meetings; neither did it keep any records of corporate proceedings. Knapp did not make a formal assignment of the said lease or make a lease to the taxpayer, but merely kept a record of the credits upon the books of the taxpayer. The beneficial ownership of the lease was in the corportion. Subsequently, in the year 1923, taxpayer's brother bought a portion of the outstanding stock and became interested in the business. The brother induced Knapp to make a formal lease direct to the taxpayer, in words and figures as follows:

STATE OF ALABAMA,
    Jefferson County.

KNOW ALL MEN BY THESE PRESENTS: That, for and in consideration of the sum of One ($1.00) dollar, in hand paid to me, the undersigned D. P. Knapp by the Ensley Motor Company, a corporation, Ensley, Alabama, the receipt whereof is hereby acknowledged, together with other good and valuable considerations, I, the undersigned D. P. Knapp, do hereby grant and convey to the Ensley Motor Company the privilege of occupying the two-story building now occupied by said corporation on the corner of Avenue E and 20th Street, situated on Lots 13, 14, and 15, in Block 19-D, Ensley, Alabama, recorded in Map Book 4 on page 3 of Map of Records in the Probate Office of Jefferson County, Alabama; said lots and building forming a rectangle seventy-five by one hundred forty feet fronting on Avenue E, as shown by said Map.

I do grant to the said Ensley Motor Company the privilege of occupying said building for a time beginning from the 1st day of August, 1923, to the 25th day of March, 1927, covering a period of forty-three (43) months and twenty-five (25) days.

The said Ensley Motor Company is to keep said building in repair by reason of damage by accidents or any other cause, ordinary wear and tear and fire excepted.

Witness our hands and seals in duplicate this 16th day of August 1923.

(Sgd.)        D. P. KNAPP.        [L. S.]
              ENSLEY MOTOR COMPANY.        [L. S.]
(Sgd.) By G. E. KNAPP, Vice President.

5. The taxpayer for the year 1919 made a deduction of $7,294.69. Of this sum $1,237.09 represented expenditures for shelving, bins, and other improvements peculiar to the automobile trade, which was not included as a capital expenditure as between the lessor and lessee of the building; $6,057.60 purported to represent an amortization of the lease at the rate of $555.76 per month, based on a life of a lease of approximately 85 months. For the year 1921 the taxpayer claims a deduction, as an amortization of the lease, based on the monthly payment of $555.76 on a lease with a life of approximately 85 months.

The Commissioner refused to allow such deduction, but did allow a deduction for amortization of the lease on the basis of a life of

171.5 months, the term of the lease between Knapp and the said Ramsay & McCormack. He allowed amortization on the total sum of $48,914.37, spread over a period of 171.5 months, at a monthly rate of $284.98.

## DECISION.

The determination of the Commissioner is approved.

## OPINION.

TRAMMELL: The question involved in this appeal is solely one of fact. We are to determine whether the amortization of the cost of the improvements on the leased property should be spread over a period of 171.5 months, as determined by the Commissioner, or 85 months, as claimed by the taxpayer. The Commissioner's calculation is based on the lease entered into by and between Knapp, the president and principal stockholder of the taxpayer, and Ramsay & McCormack. The period of this lease is 171.5 months. The taxpayer's claim is based upon an alleged verbal understanding between Knapp and the taxpayer and the terms of the lease subsequently executed August 16, 1923.

There is no question that the taxpayer raised the money and paid the cost of the improvements, although the credit of Knapp was utilized in securing the funds. In keeping the books and in all its transactions with respect to the lease with Ramsay & McCormack the taxpayer acted as if it were the lessee, although the lease was in form made with Knapp. As Knapp was practically the sole owner of the stock of the taxpayer, there evidently appeared to him no necessity for a formal transfer of the lease to the corporation, but, as a matter of fact, the beneficial ownership of the lease was in the corporation, and Knapp was acting for it and in its behalf. During the taxable years in question the only lease in existence provided for a term of 171.5 months, or approximately 14 years. There was no payment of rent to Knapp or any indication or evidence that he was considered the lessor and the taxpayer a sublessee. Under the theory of the taxpayer its lease expired in 1927, while the original lease ran until 1934. This would result in the cost of improvements being fully amortized in 1927, and Knapp personally receiving the benefit of the lease for seven years more, *although the cost of improvements sought to be amortized was paid by the taxpayer corporation.* We are convinced from the evidence that Knapp, at the time of the negotiations for the lease and the subsequent execution of the remaining lease with Ramsay & McCormack, had no idea of personal benefit but acted solely for the taxpayer, and that it was intended that the

taxpayer should have the benefit of the lease for the entire period of 171.5 months, subject, of course, to the provisions for its termination. It is true the payment of $555.76 per month would amortize the total cost of improvements in 1927, but this is not material to the question at issue, as the lease itself and the benefits thereunder run until 1934. We are of the opinion that the contention of the Commissioner is correct, under the circumstances of this appeal.

We are also of the opinion that the cost of improvements should be computed at $48,914.37, rather than $47,637.38. This difference of $1,237.09 arises from the fact that, in the adjustment of the capital cost between the lessor and lessee, this latter amount was deducted by the lessor for the reason that it represented improvements of special benefit to the automobile trade and not of general benefit to the structure. These improvements consisted of wooden shelving, bins, etc., which were subsequently replaced in 1923 by metal improvements. In whatever manner those improvements may be regarded as between the lessor and lessee, nevertheless, as to the taxpayer for income-tax purposes it was a capital expenditure, subject to exhaustion over the life of the property or the life of the lease, whichever is shorter.