*769 OPINION.
Trammell:
The question involved in this appeal is solely one of fact. We are to determine whether the amortization of the cost of the improvements on the leased property should be spread over a period of 171.5 months, as determined by the Commissioner, or 85 months, as claimed by the taxpayer. The Commissioner’s calculation is based on the lease entered into by and between Knapp, the president and principal stockholder of the taxpayer, and Ramsay & McCormack. The period of this lease is 171.5 months. The taxpayer’s claim is based upon an alleged verbal understanding between Knapp and the taxpayer and the terms of the lease subsequently executed August 16,1923.
There is no question that the taxpayer raised the money and paid the cost of the improvements, although the credit of Knapp was utilized in securing the funds. In keeping the books and in all its transactions with respect to the lease with Ramsay & McCormack the taxpayer acted as if it were the lessee, although the lease was in form made with Knapp. As Knapp was practically the sole owner of the stock of the taxpayer, there evidently appeared to him no necessity for a formal transfer of the lease to the corporation, but, as a matter of fact, the beneficial ownership of the lease was in the corporation, and Knapp was acting for it and in its behalf. During the taxable years in question the only lease in existence provided for a term of 171.5 months, or approximately 14 years. There was no payment of rent to Knapp or any indication or evidence that he was considered the lessor and the taxpayer a sublessee. Under the theory of the taxpayer its lease expired in 1927, while the original lease ran until 1934. This would result in the cost of improvements being fully amortized in 1927, and Knapp personally receiving the benefit of the lease for seven years more, although the cost of improvements sought to be amortized was paid by the taxpayer corporation. We are convinced from the evidence that Knapp, at the time of the negotiations for the lease and the subsequent execution of the remaining lease with Ramsay & McCormack, had no idea of personal benefit but acted solely for the taxpayer, and that it was intended that the *770 taxpayer should have the benefit of the lease for the entire period of 171.5 months, subject, of course, to the provisions for its termination. It is true the payment of $555.76 per month would amortize the total cost of improvements in 1927, but this is not material to the question at issue, as the lease itself and the benefits thereunder run until 1934. We are of the opinion that the contention of the Commissioner is correct, under the circumstances of this appeal.
We are also of the opinion that the cost of improvements should be computed at $48,914.37, rather than $47,637.38. This difference of $1,237.09 arises from the fact that, in the adjustment of the capital cost between the lessor and lessee, this latter amount was deducted by the lessor for the reason that it represented improvements of special benefit to the automobile trade and not of general benefit to the structure. These improvements consisted of wooden shelving, bins, etc., which were subsequently replaced in 1923 by metal improvements. In whatever manner those improvements may be regarded as between the lessor and lessee, nevertheless, as to the taxpayer for income-tax purposes it was a capital expenditure, subject to exhaustion over the life of the property or the life of the lease, whichever-is shorter.